

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00356-CR

_____

OKEKE KAMEL ONICK AKA OKEILY KAMEL ONEIL, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 432nd District Court
Tarrant County, Texas
Trial Court No. 1477262R

Before Gabriel, Kerr, and Bassel, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

## I. INTRODUCTION

A jury convicted Appellant Okeke Kamel Onick aka Okeily Kamel Oneil of three counts of possession of more than four grams but less than 200 grams of a controlled substance with the intent to deliver and assessed his punishment at forty years' confinement for each count. *See* Tex. Health & Safety Code Ann. § 481.112(a), (d). The trial court rendered a separate judgment for each count and sentenced him accordingly with the punishment for each count to run concurrently.

Appellant raises four issues. We affirm the judgments as modified.

## II. BACKGROUND[1]

In April 2016, the Fort Worth Police Department received a tip that Appellant was selling drugs from his mother's house in Fort Worth. After obtaining a search warrant, the FWPD executed the warrant and searched the home. When they entered, Appellant's mother was the only person there. In a bedroom that was identified as Appellant's, the FWPD discovered among other things, mail addressed to Appellant. They also discovered a black duffle bag that contained, among other things, plastic bags of cocaine, methamphetamine, and black-tar heroin, as well as a plastic card with Appellant's name on it.

---

[1]Because the resolution of this appeal does not require more, we set forth a limited recitation of the factual and procedural background. *See* Tex. R. App. P. 47.1.

2

Appellant was indicted for three counts of possession of a controlled substance—one count for cocaine, one count for heroin, and one count for methamphetamine—with the intent to deliver. *See* Tex. Health & Safety Code Ann. § 481.112(a). At trial, Appellant's primary defensive theory was that there was no direct evidence linking him to the black duffle bag and that there was direct testimony linking the black duffle bag to another person. However, a jury convicted Appellant of all three counts and assessed his punishment at forty years' confinement in the Institutional Division of the Texas Department of Criminal Justice.

### III. NO VIOLATION OF DUE PROCESS CLAUSE OF FOURTEENTH AMENDMENT BECAUSE THE JURY CHARGE INCLUDED ALL ESSENTIAL ELEMENTS

In his first issue, Appellant argues that the jury charge improperly omitted an essential element of the underlying offense—namely, the penalty group. To explain, the section of the health and safety code under which Appellant was charged makes it an offense to possess with intent to deliver "a controlled substance listed in Penalty Group 1." *Id.* Appellant argues that this phraseology makes an element of the offense not the possession of one of the controlled substances contained in the list found in the penalty group, but instead the penalty group itself. In other words, Appellant contends the charge should simply inquire whether the defendant possessed with intent to deliver "a controlled substance listed in Penalty Group 1." And Appellant contends that the Dallas Court of Appeals incorrectly held in *Roberson v. State* that the penalty group is not a separate element of an offense under section

3

481.112(a) of the health and safety code. No. 05-15-00550-CR, 2016 WL 3517937, at *2 (Tex. App.—Dallas June 20, 2016, no pet.) (mem. op., not designated for publication). We disagree.

## A. Standard of Review

We must review "all alleged jury-charge error . . . regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). In reviewing a jury charge, we first determine whether error occurred; if not, our analysis ends. *Id.*

## B. Applicable Law

"The Due Process Clause of the Fourteenth Amendment 'protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" *Yates v. Aiken*, 484 U.S. 211, 214, 108 S. Ct. 534, 536 (1988) (quoting *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 1072 (1970)).

Pursuant to the health and safety code, "a person commits an offense if the person knowingly . . . possesses with intent to deliver a controlled substance listed in Penalty Group 1." Tex. Health & Safety Code Ann. § 481.112(a). Among the controlled substances statutorily listed in "Penalty Group 1" are heroin, cocaine, and methamphetamine. *Id.* § 481.102(2), (3)(D), and (6). Therefore, the elements of this offense are that the defendant: (1) possessed a controlled substance in the amount charged; (2) intended to deliver the controlled substance to another; and (3) knew that

4

the substance in his possession was a controlled substance. *See Roberson*, 2016 WL 3517937, at \*2; *Walker v. State*, No. 03-14-00473-CR, 2016 WL 2942398, at \*2 (Tex. App.—Austin May 10, 2016, pet. ref'd) (mem. op., not designated for publication); *see also Bahr v. State*, 295 S.W.3d 701, 707 (Tex. App.—Amarillo 2009, pet. ref'd).

## C. Analysis

Here, the trial court instructed the jury, in part, as follows:

A person commits an offense if he intentionally or knowingly possesses a controlled substance. *Under our law, cocaine, heroin and methamphetamine are controlled substances.*

"Possession" means actual care, custody, control or management. Possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control.

. . . .

COUNT ONE

Now, if you find from the evidence beyond a reasonable doubt that in Tarrant County, Texas, on or about the 21st day of April, 2016, the [Appellant] did intentionally or knowingly possess with intent to deliver *a controlled substance, namely cocaine*, of more than four grams but less than two hundred grams, including any adulterants or dilutants, then you will find the defendant guilty as charged in Count One of the indictment.

. . . .

COUNT TWO

Now, if you find from the evidence beyond a reasonable doubt that in Tarrant County, Texas, on or about the 2lst day of April, 2016, the [Appellant] did then and there intentionally or knowingly possess with intent to deliver *a controlled substance, namely heroin*, of more than four

5

grams but less than two hundred grams, including any adulterants or dilutants, then you will find the defendant guilty as charged in Count Two of the indictment.

. . . .

COUNT THREE

Now, if you find from the evidence beyond a reasonable doubt that in Tarrant County, Texas, on or about the 21st day of April, 2016, the [Appellant] did intentionally or knowingly possess with intent to deliver *a controlled substance, namely methamphetamine*, of more than four grams but less than two hundred grams, including any adulterants or dilutants, then you will find the defendant guilty as charged in Count Three of the indictment. [Emphasis added.]

Although we are not bound by *Roberson*, an unpublished case from the Dallas Court of Appeals, we agree with its reasoning and conclusion that "the penalty group is not an element of the offense."[2]  2016 WL 3517937, at *2.  Because cocaine, heroin,

---

[2]In relying on *Roberson*, we recognize that *Roberson* in turn relied on *Watson v. State*, a case in which a plurality of the court of criminal appeals held in the context of a double-jeopardy challenge that the Legislature intended to make possession of each individual substance within the same penalty group a separate and distinct offense. 900 S.W.2d 60, 62 (Tex. Crim. App. 1995) (plurality opinion).  Thus, possession of multiple Penalty Group 1 substances constitutes separate offenses.

Although not cited by either party, our research reveals that in a recent concurring opinion on the denial of rehearing, Justice Newell asserts that because "it now appears that the Court believes that the specific identity of the control group substance is not a 'crucial' fact necessary to prove up the offense of possession of a controlled substance[,] . . . the State need only prove possession of a substance within a particular penalty group." *Ex parte Broussard*, 517 S.W.3d 814, 824 (Tex. Crim. App. 2017) (Newell, J., concurring).  Thus, according to Justice Newell, "to the extent *Watson* provided any authority for granting relief, the Court overruled it *sub silentio . . . Watson* is no longer good law." *Id.* at 824–25.

6

and methamphetamine are statutorily-defined controlled substances listed in Penalty Group 1—indeed, Appellant does not direct us to anywhere in the record to show that the inclusion of these controlled substances as Penalty Group 1 substances was even an issue at trial—there is no fact-finding role for the jury to determine whether these substances are listed in Penalty Group 1 or not. *See id.* Thus, because the individual controlled substance and not the penalty group is the essential element of the offense, the jury charge does not contain error with respect to the lack of definition or instruction that cocaine, heroin, and methamphetamine are "controlled substances listed in Penalty Group 1." *See id.*; *cf. Watson*, 900 S.W.2d at 62.

Accordingly, we overrule Appellant's first issue.[3]

## IV. NO IMPERMISSIBLE COMMENT ON WEIGHT OF EVIDENCE

In his second issue, Appellant complains that the trial judge improperly commented on the weight of the evidence and that said improper comment constitutes reversible error. Specifically, Appellant complains of a statement from the trial judge, which occurred after a hearing outside of the presence of the jury.

---

While we acknowledge Justice Newell's characterization of *Watson* as "no longer good law," we are reluctant to ignore a case from the court of criminal appeals until it has been expressly overruled or until Justice Newell's characterization of *Watson* is adopted by the court. Thus, we join *Roberson* in relying on *Watson*.

[3]Having concluded that there is no error, we need not address Appellant's arguments regarding harm. *See Kirsch*, 357 S.W.3d at 649.

7

The Prosecutor questioned one of the officers who executed the search warrant and found the black duffle bag containing the controlled substances. The officer testified that in addition to the controlled substances, he found "fraudulent things." Anticipating that the Prosecutor was about to try to elicit testimony concerning "counterfeit" credit cards that would be used to try to link the black duffle bag and its contents to Appellant, defense objected, and the trial court conducted a hearing outside of the presence of the jury. When the jurors were brought back into court, the trial judge instructed them to pay attention to what was coming. The relevant portions of this exchange concluding with the trial judge's statement that Appellants complains of are as follows:

Q. Now, as part of that search of the room, did you search the closet?

A. Yes, sir, I did.

Q. Okay. Describe to the jury what you found in the closet.

A. The door was open. You can see the hole in the door, and there was a black duffle bag, nylon zipper bag, large. And I could immediately see plastic bags on top of that. Pulling it out, the drugs, the narcotics started coming out of it. You know, we found quite a bit of narcotics inside the bag, fraud – fraudulent things.

[APPELLANT'S TRIAL COUNSEL]: Objection, Your Honor, may we approach?

THE COURT: You may.

(BENCH CONFERENCE PROCEEDINGS)

[APPELLANT'S TRIAL COUNSEL]: Your Honor, I'll object to any reference to any fraudulent -- fraudulent things or things of any

8

other supposed illegal nature. One of the things that they're -- one of the things that -- I don't know exactly what he's going to say, but I anticipate he's probably going to say there was some counterfeit credit cards or things of that nature. That would be evidence of some other uncharged crime. And I would ask the Court to either admonish the jury to disregard what was stated or move for a mistrial.

(OPEN COURT PROCEEDINGS)

THE COURT: Members of the jury, we're going to take a brief recess. And when I say brief, what about five after 4:00. And then when we come back, I'm not going to keep you real late today, so we'll leave at a normal time. But you will be in recess for 15 minutes, and when you come back, we'll be ready to go.

(Jury not present)

. . . .

(Recess from 3:55 p.m. to 4:07 p.m.)

(Open court, Defendant and jury present)

THE COURT: Thank you. Please be seated.

And, Officer, you're still under oath.

Ladies and gentlemen of the jury, I – I'm going to ask you to disregard the testimony previously given about a card that -- there were pictures concerning that. But the State is going to re-question him regarding that, *so pay attention to what's coming.* [Emphasis added.]

## A. Applicable Law

Article 38.05 of the code of criminal procedure prohibits the trial judge from commenting on the weight of the evidence in criminal proceedings or otherwise divulging to the jury his opinion of the case:

9

> In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case.

Tex. Code Crim. Proc. Ann. art. 38.05; *Proenza v. State*, 541 S.W.3d 786, 791 (Tex. Crim. App. 2017). "In carrying out its duties in ruling upon [a defendant's] objection, a trial court must not embellish the ruling with an unwarranted comment." *Bachus v. State*, 803 S.W.2d 402, 405 (Tex. App.—Dallas 1991, pet. ref'd). A trial judge improperly comments on the weight of the evidence if he makes a statement that implies approval of the State's argument, indicates disbelief in the defense's position, or diminishes the credibility of the defense's approach to the case. *Simon v. State*, 203 S.W.3d 581, 590 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

## B. Analysis

After reviewing the statement Appellant complains of, we conclude that it was not an impermissible comment on the weight of the evidence or an expression of the trial judge's opinion of the case. Rather, we agree with the State that the trial judge's statement to "pay attention to what's coming" was simply to refocus the jurors and prompt them to resume paying attention after returning from a recess toward the end of the day. And, in the context of the entire trial, the comment was insignificant. *See Proenza*, 541 S.W.3d at 800.

Appellant argues that the entire case turned on whether the black duffle bag found in the room belonged to him or a different person. Appellant contended that

although some items found in the bag had his name on them, those items had been taken without his knowledge. However, Appellant cites no authority and provides no argument to support that the trial judge's comment helped the State's case or prejudiced Appellant's case—the trial judge made no statement or indication that he believed the officer's testimony proved that Appellant owned the black duffle bag or that the credit card with Appellant's name inside of the duffle bag proved that the bag and its contents belonged to Appellant. *See Singleton v. State*, 91 S.W.3d 342, 352 (Tex. App.—Texarkana 2002, no pet.) (holding no error for improper judicial comment on weight of evidence when none of the remarks was "calculated to convey the court's opinion of the case to the jury, and none of them had an effect on the presumption of innocence in the presence of the jury").

Moreover, the evidence concerning the credit cards and identifying items in the black duffle bag were also offered by Appellant's trial counsel and were admitted into evidence during Appellant's case in chief. Therefore, the trial court's statement to "pay attention" to the officer's testimony concerning the items found in the black duffle bag was arguably reinforced by Appellant's trial strategy.

Because we conclude that the trial judge's comment did not violate article 38.05, we overrule Appellant's second issue.

## V. MODIFY JUDGMENTS

In his third issue, Appellant contends that the judgments erroneously provide that he was convicted of violating section 481.112(d) of the health and safety code, when he was actually convicted of violating section 481.112(a).[4]

The record before us makes it clear Appellant was convicted for the offense of possession with intent to deliver a controlled substance under section 481.112(a), and because the amount of the controlled substance was more than four grams but less than 200 grams, the offense is accurately classified as a felony of the first degree under subsection (d). Accordingly, we modify the trial court's written judgments of conviction under "Statute for Offense," so that the judgments reflect "481.112(a), (d) HSC" rather than "481.112(d) HSC," and we overrule Appellant's third issue as moot. *See* Tex. R. App. 43.2(b); Tex. Health & Safety Code Ann. § 481.112(a), (d).

## VI. RELEASE OF JURORS' PERSONAL INFORMATION

In his fourth and final issue, Appellant contends that the trial court abused its discretion in allowing the State access to the jurors' personal information and asks us to vacate the order granting said access.

---

[4]Section 481.112(a) provides, "Except as authorized by this chapter, a person commits an offense if the person knowingly manufactures, delivers, or possesses with intent to deliver a controlled substance listed in Penalty Group 1." Tex. Health & Safety Code Ann. § 481.112(a). Section 481.112(d) states, "An offense under Subsection (a) is a felony of the first degree if the amount of the controlled substance to which the offense applies is, by aggregate weight, including adulterants or dilutants, four grams or more but less than 200 grams." Tex. Health & Safety Code Ann. § 481.112(d).

Article 35.29 protects personal information about jurors, creating a presumption that such information may not be disclosed absent a showing of good cause by a party in the trial or a bona fide member of the news media. *See* Tex. Code Crim. Proc. Ann. art. 35.29; *Romero v. State*, 396 S.W.3d 136, 150 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). Because such personal information may only be disclosed upon a showing of good cause, we review a trial court's ruling granting access to jurors' personal information under an abuse of discretion standard. *See Romero*, 396 S.W.3d at 153 (concluding no abuse of discretion by not releasing jurors' personal information because requesting party did not establish good cause). A trial court abuses its discretion when it acts without reference to any guiding rules and principles, or it acts in an arbitrary or capricious manner. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). A trial court does not abuse its discretion if its ruling is at least within the zone of reasonable disagreement. *Id.* at 391; *Taylor v. State*, 461 S.W.3d 223, 230 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd).

We agree with Appellant that the State's unsworn motion, without any supporting evidence, in which the State asserted without specificity that it needed the jurors' information in order to send out letters regarding "possible" post-trial remedies and associated rights, does not constitute good cause. *See Taylor*, 461 S.W.3d at 231 (holding no abuse of discretion denying appellant's request for juror information cards because requesting the information "to decide whether there is a basis for filing a motion for new trial is not a showing of good cause"). Therefore,

the trial court abused its discretion by signing the order to release the jurors' confidential information. *See Hooker v. State*, 932 S.W.2d 712, 716 (Tex. App.—Beaumont 1996, no pet.). But Appellant sets forth no showing of how he has been harmed and his substantive rights affected by the error. *See* Tex. R. App. P. 44.2(b). Indeed, Appellant had already been convicted and his punishment assessed at the time the trial court signed the order.[5]

Accordingly, any error is not reversible, and we overrule Appellant's fourth issue.

## VII. CONCLUSION

Having overruled all of Appellant's issues, we affirm the trial court's judgments as modified. *See* Tex. R. App. P. 43.2(b).

/s/ Dabney Bassel
Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: May 2, 2019

---

[5]Although not clear from the record or briefing, this issue may be moot because the order was signed on July 16, 2018, and presumably the jurors' information has already been released. *See Rodriguez v. State*, No. 14-99-00158-CR, 1999 WL 588877, at *2 (Tex. App.—Houston [14th Dist.] Aug. 5, 1999, no pet.) (per curiam) (not designated for publication) (explaining when intervening events have rendered an issue moot, an appellate court can offer only an impermissible advisory opinion).

14